IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GERARD SZUBIELSKI, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 15-984-RGA |
| WARDEN DAVID PIERCE, | : | |
| Defendant. | : | |

Gerard Szubielski, James T. Vaughn Correctional Center, Smyrna, Delaware; Pro Se Plaintiff.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware; Counsel for Defendant.

**MEMORANDUM OPINION**

January 16, 2018
Wilmington, Delaware

**ANDREWS, U.S. District Judge:**

Plaintiff Gerard Szubielski, an inmate at the James T. Vaughn Correctional Center, in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and has been granted leave to proceed in *forma pauperis*. Defendant former VCC Warden David Pierce has filed a motion to dismiss and a motion for summary judgment.[1] (D.I. 37, 42). Plaintiff opposes the motion to dismiss but, despite being given additional time, did not file a response to the motion for summary judgment. (D.I. 41, 46). Plaintiff has filed a request for counsel. (D.I. 47).

## BACKGROUND

On March 2, 2007, Plaintiff was sentenced as a habitual offender to life in prison. *See Szubielski v. State*, 82 A.3d 730 (Del. 2013). The complaint (D.I. 3) and amended complaint (D.I. 7) (the Court considers them together as the operative pleading) allege that in early 2007, Plaintiff was transferred to the VCC and housed in maximum security solitary confinement ("SHU"). (D.I. 3 at p.5; D.I. 7 at ¶ 3). Once a year, Plaintiff is classified by the Institutional Based Classification Committee ("IBCC"). When he commenced this action, Plaintiff had been classified to SHU since 2007. (D.I. 3 at p.5; D.I. 7 at ¶ 2). Defendant became the warden at the VCC in August 2013 when he replaced Perry Phelps.[2] *See* https://doc.delaware.gov/news/pdfs/13press0822-2.pdf (last visited Jan. 2, 2018).

---

[1] Because Defendant raises the same issues in both motions, I will rule on the motion for summary judgment and dismiss as moot the motion to dismiss.

[2] Defendant was placed on paid administrative leave February 2017 following the hostage incident at the VCC, and in March or April of 2017 reassigned to the Bureau of

1

The IBCC conducted Plaintiff's annual classification review in August 2012, 2013, and 2014. (D.I. 35-1 at pp.1-3). The Delaware Department of Correction institutional classification system instructional handbook, dated April 11, 2011, provides that offenders assigned to maximum security will be reviewed every twelve months. (D.I. 15 at p.14). After each review, the IBCC recommended Plaintiff's housing in maximum security. (Id.)

In early 2015, Plaintiff wrote to Pierce and requested a transfer from SHU. Pierce replied that he would consider the transfer shortly after the August 2015 classification review. On August 6, 2015, the ACLU and Community Legal Aid Society, Inc. filed a § 1983 lawsuit against the Delaware DOC over the mental health treatment provided inmates in SHU and the length of time they are housed there. See *Community Legal Aid Society, Inc. v. Coupe*, Civ. No. 15-688-GMS (D. Del.). The inmates were not specifically named in the lawsuit, but Plaintiff was one of the inmates described in the lawsuit. On May 11, 2015, Plaintiff was notified by counsel for Community Legal Aid that he would be identified to the attorney for Delaware DOC even though Plaintiff would not be identified in the lawsuit. (D.I. 41 at p.6).

The IBCC conducted its annual review in 2015 and, on September 1, 2015, classified Plaintiff to medium security, medium high programs, and inmate worker. (Id. at p.4). Thereafter, Plaintiff was notified that Pierce "did an over-ride and stopped" Plaintiff's transfer from SHU. (D.I. 3 at p.5; D.I. 7 at ¶ 5). On October 14, 2015, Pierce

---

Community Corrections. See https://delawarestatenews.net/news/former-vaughn-warden-reassigned-retains-salary/ (last visited Jan. 3, 2018).

vetoed the IBCC medium security level classification and ordered Plaintiff's continued housing in maximum security. (D.I. 35-1 at pp.4-5).

Plaintiff alleges that he met the requirements for a transfer from SHU, and was retaliated against following the filing of the ACLU lawsuit through excessive shakedowns and by Pierce ordering Plaintiff's continued housing in SHU despite his medium security classification. Plaintiff also alleges he was not afforded his procedural due process rights because his solitary confinement reviews occurred only once a year, he was not given an opportunity to meet with the review committee or speak for himself, and he only saw a DOC counselor once a year for no more than five minutes and then was usually told he was staying in maximum security. (D.I. 7 at p.5).

Plaintiff was transferred out of SHU on June 15, 2016. (D.I. 43, Ex. B). Plaintiff's annual review took place in August 2016. (*Id.* at Ex. A at DOC6). On September 1, 2016, an order was entered in the ACLU/Community Legal Aid case and the case was closed. See *Community Legal Aid Society, Inc.* Civ. No. 15-688-GMS at D.I. 40. On September 15, 2016, the IBCC classified Plaintiff to medium security and academic programs. (*Id.*). Plaintiff was transferred out of maximum security housing altogether on October 11, 2016. (*Id.* at Ex. B).

Plaintiff alleges unlawful conditions of confinement resulting from extreme isolation and inadequate medical care over an extended period of time from January 2007 up to the date he commenced this action. Plaintiff alleges Defendant "knows and is deliberately indifferent to the harm that solitary confinement imposes on Plaintiff." (D.I. 7 at pp.9-10). Plaintiff complains of 24-hour cell confinement, limited recreation,

3

extreme social isolation, environmental deprivation, limited telephone calls, and limited visits.

Plaintiff suffers from schizophrenia, severe manic depression, and an anxiety disorder. He alleges his conditions were under control until early 2012 when his medications were taken from him because they were no longer on the "DOC approval list." (D.I. 7 at p.9). Plaintiff states that he is not on any medication at the present time because side effects do not allow him to be properly treated. His mental health treatment is limited and/or non-existent. Plaintiff seeks injunctive relief, as well as compensatory and punitive damages.

Defendant moves for summary judgment on the grounds that: (1) Plaintiff's claims for prospective injunctive relief are moot; (2) Defendant is shielded from suit by reason of qualified immunity; and (3) Defendant lacks personal knowledge or involvement as to the Eighth Amendment claim.

## STANDARDS OF LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a

verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

Plaintiff did not file an opposition to the motion for summary judgment. However, I will not grant the entry of summary judgment without considering the merits of Defendant's unopposed motion. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (district court may not grant a motion for summary judgment solely because the motion is unopposed). In addition, given Plaintiff's *pro se* status, I will consider the arguments he raised in opposition to the motion to dismiss (D.I. 41) since the issues raised in the motion to dismiss and motion for summary judgment are the same.

## DISCUSSION

### Injunctive Relief

The Court screened Plaintiff's complaint and amended complaint together as the operative complaint. The complaint asks for compensatory and punitive damages as well as injunctive relief, while the amended complaint asks for injunctive relief.[3] Defendant, relying only on the prayer for relief in the amended complaint, *see* D.I. 7, seeks dismissal of the case on the grounds that Plaintiff's claim for prospective injunctive relief is moot in light of the fact that Plaintiff is no longer housed in SHU and Pierce is no longer the warden at the VCC.

It is not clear from Plaintiff's claims if Pierce is sued in his official and individual capacity, and neither party has addressed the issue. To the extent Defendant is named

---

[3] Plaintiff titled docket item 7, docketed as an amended complaint, as "notice of motion legal argument enclosed for 1983 civil complaint." (D.I. 7).

5

in his official capacity, the suit against him is not a suit against Defendant but, rather, is a suit against his office and, as such, it is no different from a suit against the State itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). Further, while § 1983 claims for monetary damages against a state, state agency, or a state official in his official capacity are barred by the Eleventh Amendment, *Ali*, 353 F. App'x at 672, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted).

Defendant contends that Plaintiff alleges harm that is not capable of repetition due to the settlement agreement reached in *Community Legal Aid*, Civ. No. 15-688-GMA, wherein the DOC agreed to make changes to the use of restrictive housing. "The capable of repetition yet evading review doctrine is an exception to mootness that applies when (1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Parkell v. Danberg*, 833 F.3d 313, 333 (3d Cir. 2016). The exception is "narrow and available only in exceptional situations." *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007) (quotation marks omitted).

At this juncture, I am not prepared to make this determination, particularly in light of the fact that Plaintiff is serving a life sentence, I have not been provided with any medical records regarding his alleged long-standing mental health condition, the record on this issue is not developed and, other than generalities, Defendant has not indicated how the agreement in *Community Legal Aid* applies to Plaintiff. *See, e.g., Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002) (disciplinary detention and administrative segregation are the sort of confinement inmates should reasonably anticipate receiving at some point in their incarceration); *Parkell*, 833 F.3d at 333 (remanding issue to district court to determine whether request for injunctive relief remains a live issue under the capable of repetition exception to mootness). Defendant's motion on this issue will be denied.

## Due Process

Defendant seeks summary judgment on the grounds that he has qualified immunity. In turn, Plaintiff argues that Defendant is not entitled to qualified immunity.

Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as: (1) the official's conduct does not violate "a statutory or constitutional right, and (2) [] the right was 'clearly established' at the time of the

7

challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). To determine if a right is clearly established, the Third Circuit directs me to first look for Supreme Court precedent. *Mammaro v. New Jersey Div. of Child Protection and Permanency*, 814 F.3d 164, 169 (3d Cir. 2016). If there is none, then I may rely on a "'robust consensus of cases of persuasive authority' in the Court[s] of Appeals." *Id.* (quoting *Taylor v. Barkes*, __ U.S. __, 135 S. Ct. 2042, 2044 (2015) (per curiam)). "[A]lthough earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The Court exercises its discretion to decide which of the two prongs of the qualified immunity analysis to address first "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see Mirabella v. Villard*, 853 F.3d 641, 648–49 (3d Cir. 2017).

8

The two-step test as set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), is often appropriate when analyzing qualified immunity. *Pearson*, 555 U.S. at 236. Under the *Saucier* test, first, the court examines whether or not the alleged conduct, taken in the light most favorable to Plaintiff, violated a constitutional right. *Saucier*, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. If the allegations amount to the violation of a constitutional right, the court proceeds to the second inquiry and determines if the right was "clearly established in the specific context of the case." *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 202 (noting that an officer is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

Defendant frames the issue as "whether a prison official may use his or her authority to house an inmate in restrictive housing for several months." (D.I. 43 at n.3). Defendant argues that based upon established law, the answer is clearly "yes." (*Id.*) He relies upon Third Circuit law holding that an inmate in solitary confinement for less than a year does not trigger substantive due process rights. (*Id.*)

I agree that the Third Circuit has made rulings in this regard. *See Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (fifteen months in segregation was not an atypical and significant hardship); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months' disciplinary confinement "does not, on its own, violate a protected liberty interest as defined in [*Sandin v. Conner*, 515 U.S. 472 (1995)]."). However, I disagree

9

with Defendant's framing of the issue. The issue is more properly framed as whether Plaintiff's continued confinement in SHU isolation for a period of more than eight years violated his constitutional rights.

Defendant places in a vacuum, and not contextually, his decision to veto Plaintiff's classification to medium security. The consequences of his decision extended Plaintiff's eight year housing in SHU by an additional eight additional months (from October 2015 until June 2016). Ignoring the eight years is wrong. Defendant makes no mention of the fact that he was the VCC warden from August 2013 until February 2017 and, during his entire tenure, Plaintiff was housed in SHU. Nor does Defendant make mention of *Shoats v. Horn*, 213 F.3d 140 (3d Cir. 2000), where the Third Circuit held that an inmate held in virtual isolation for eight years was sufficiently atypical and significant to create a protected liberty interest.

In light of *Shoats*, I cannot say that qualified immunity shields Defendant from the decision to exercise the discretion afforded him to keep Plaintiff in SHU given the extraordinary length of time Plaintiff had already spent there and the conditions in SHU as described by Plaintiff. Nor do I have sufficient evidence before me to determine if Plaintiff received the process he was due under the Fourteenth Amendment (as required under *Hewitt v. Helms*, 459 U.S. 460 (1983)), once Defendant decided to continue Plaintiff's housing in SHU. Defendant argues that there is no record to support a finding that Plaintiff was denied due process or that he had anything to do with that process. However, based upon the record before the Court, it appears that it was Defendant's decision alone to veto the medium security classification. There is nothing

10

before the Court to indicate what process, if any, Plaintiff was due once the veto was made. See 11 Del. C. § 6529(d) (warden shall maintain the power to veto decisions of the classification board). Because there remain genuine issues of fact, summary judgment is not appropriate on the issue of whether qualified immunity shields Defendant from Plaintiff's due process claim. Therefore, the Court will deny the motion for summary judgment as to this issue.[4]

**Eighth Amendment**

Plaintiff raises an Eighth Amendment SHU conditions of confinement claim. Defendant moves for summary judgment on the grounds that there is no allegation or support in the record that he had any personal knowledge or involvement. Plaintiff did not address the issue of Defendant's personal involvement in his response. (D.I. 41).

The Eighth Amendment protects prison inmates from cruel and unusual punishment. See, e.g., Farmer v. Brennan, 511 U.S. 825, 832 (1994). The practice of housing certain prisoners in isolation from other inmates is not necessarily a condition of confinement that violates the Eighth Amendment. "Solitary confinement in and of itself does not violate Eighth Amendment prohibitions, and the temporary inconveniences and discomforts incident thereto cannot be regarded as a basis for judicial relief." Ford v. Board of Managers of N.J. State Prison, 407 F.2d 937, 940 (3d Cir. 1969); see also Washington–El v. Beard, 2011 WL 891250, at *3 (W.D. Pa. Mar. 11, 2011). In addition

---

[4] Defendant cannot take advantage of a qualified immunity defense to the extent a claim is raised against him in his official capacity. See Melo v. Hafer, 912 F.2d 628, 636 (3d Cir. 1990).

11

to pleading deprivation of the minimal civilized measure of life necessities, a plaintiff must demonstrate deliberate indifference to prison conditions on the part of prison officials. See Farmer, 511 U.S. at 833. This requires a determination of whether Defendant acted with a sufficiently culpable state of mind.

Plaintiff did not address the issue of Defendant's personal involvement in his response. (D.I. 41). His failure could be considered a waiver of the issue. See Whitaker v. Springettsbury Twp., 2010 WL 1565453, at *15 (M.D. Pa. Apr. 19, 2010) (plaintiff's failure to respond to arguments raised in motion for summary judgment constitutes an abandonment of causes of action and essentially acts as waiver of issues). Nor is there evidence of record regarding Defendant's personal involvement in the alleged unlawful conditions. While Plaintiff speaks to his medical condition when he was housed in SHU, he does not indicate that Defendant was aware of his medical condition or had any personal involvement with regard to his medical condition. Plaintiff provided a letter describing him as an inmate whose mental health medication was changed upon his transfer to the VCC, but the letter makes no mention of Defendant.[5] And, while Plaintiff alleges harm as a result of his protracted confinement in the SHU due to its conditions, currently there is no evidence of record before the court to support his claim.

Due to the paucity of evidence, no reasonable juror could find in favor of Plaintiff on the Eighth Amendment conditions of confinement issue. Therefore, the Court will

---

[5] Plaintiff has been housed at the VCC since 2007.

12

grant Defendant's motion for summary judgment on this issue.

**Request for Counsel**

Plaintiff seeks counsel on the grounds that he has limited access to the law library due to changes made after the February 2017 hostage incident, counsel would aid him in obtaining discovery, the issues are complex, expert testimony will be necessary, and defendant and his attorney misrepresent the facts. (D.I. 47).

The Court determines that it is appropriate to encourage legal representation for Plaintiff by an attorney in this case. His request for counsel will be granted. (D.I. 47).

## CONCLUSION

Based upon the above discussion, the Court will: (1) dismiss as moot Defendant's motion to dismiss or for leave to file a motion for summary judgment (D.I. 37); (2) grant in part and deny in part Defendant's motion for summary judgment, with leave to renew upon further development of the record; and (3) grant Plaintiff's request for counsel (D.I. 47).

An appropriate order will be entered.